JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBAR JAZMINE SOTERO, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNICATIONS TEST DESIGN, INC., et al.,<br><br>Defendants. | No. 5:24-cv-02072-DSF-MAR<br><br>Order GRANTING CTDI's Motion to Compel Arbitration (Dkt. 10) |

    Defendant Communications Test Design, Inc. (CTDI) moves to compel arbitration of the claims brought by Plaintiff Ambar Jazmine Sotero. Dkt. 10-1 (Mot.). Sotero opposes. Dkt. 11 (Opp'n).[1] The Court deems this matter appropriate for decision without oral argument. See

---

[1] Sotero's opposition does not bear consecutive page numbers in violation of Local Rule 11-3.3. See C.D. Cal. R. 11-3.3 ("All documents shall be numbered consecutively at the bottom of each page."). The Court uses the ECF pagination when referring to Sotero's opposition. All future filings must comply with this Court's orders and the Central District's Local Rules.

Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND[2]

CTDI provides repair, engineering, and logistics services to the communications industry, including cable service providers, wireline and wireless telecom carriers, and original equipment manufacturers. Dkt. 10-5 (Scally Decl.) ¶ 3. At the time it hired Sotero, CTDI required all employees to complete an electronic onboarding process on a platform called SilkRoad Technology (SilkRoad). Id. ¶¶ 4-5. New hires who had accepted CTDI's written offer of employment received a "welcome" email that outlined the requirements for employment, including the requirement to review and sign CTDI's arbitration agreement. Id. ¶ 7. To access the agreement, employees had to log in to and create a unique account profile on SilkRoad and then click on the "task" link associated with the arbitration agreement. Id. ¶¶ 8-10.

In relevant part, the arbitration agreement states: "**THIS AGREEMENT REQUIRES ALL SUCH DISPUTES TO BE RESOLVED ONLY BY AN ARBITRATOR THORUGH** [sic] **FINAL AND BINDING ARBITRATION AND NOT BY WAY OF COURT OR JURY TRIAL.**" Dkt. 10-6, Ex. 1 (Agreement) at 2. The agreement applies to any past, present, or future legal dispute, "arising out of or

---

[2] CTDI argues that the Court should not consider Sotero's declaration because Sotero filed it after her opposition was due and improperly signed it "/ss/Ambar Jazmine Sotero." See Dkt. 13 at 15; see also Dkt. 12. If the Court considers Sotero's declaration, CTDI requests that the Court also consider Castro's declaration, which CTDI filed concurrently with its reply. Dkt. 13 at 15. Because Sotero's declaration is untimely and violates Local Rule 5-4.3.4, the Court declines to consider the declarations of Sotero and Castro. See C.D. Cal. R. 5-4.3.4(a)(3) ("In the case of documents requiring signatures other than those of registered CM/ECF filers (such as declarations), the filer must scan the hand-signed signature page(s) of the document in PDF format and electronically file the document as required by L.R. 5-4.3.1."). However, even if the Court had considered both declarations, it would not have reached a different conclusion.

related to Employee's . . . application for employment, employment with [CTDI] . . . or relationship with any of its agents, employees, affiliates, successors, assigns, subsidiaries or parent companies or termination of employment regardless of its date of accrual and survives after the employment relationship terminates." Id. It applies specifically to disputes related to "compensation, classification, minimum wage, seating, expense reimbursement, overtime, [and] breaks and rest periods." Id. The agreement also includes a class action waiver and a Private Attorney General Act (PAGA) waiver, which provide that Sotero and CTDI can "bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis." Id. at 4. Finally, the arbitration agreement states that "**[a]rbitration is not a mandatory condition of your employment at the Company, and therefore you may submit a statement notifying the Company that you wish to opt out and not be subject to this Agreement**." Id. at 6.

CTDI used SilkRoad for onboarding from about May 2017 to July 2024. Scally Decl. ¶ 5. After reviewing the arbitration agreement on SilkRoad, the employee was prompted to sign the agreement, and the following e-signature consent and acknowledgment displayed on the screen: "**I understand that by electronically signing this document by typing my full name below, that I acknowledge, agree and attest that the information provided by me is true and correct and I am freely intending to create and adopt as my own a legally binding electronic signature that carries the same legal effect and enforceability as my handwritten signature**." Id. ¶¶ 11-12. The employee then clicked the "Save and Complete Task" button, which added a timestamp and the employee's full name and IP address to the signature line of the agreement. Id. ¶ 11.

On December 8, 2021, Sotero received and electronically signed the arbitration agreement. Id. ¶ 18; see also Mot. at 15, n.2 (explaining that Sotero's "electronic signature contains the date December 9, 2021 because it was time stamped in Coordinated Universal Time"). Her personnel file does not contain a notification of her desire to opt out of the arbitration agreement. Scally Decl. ¶ 18.

3

Sotero brings this putative class action against CTDI, asserting claims for (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay all wages due upon termination; (6) failure to provide accurate wage statements; (7) failure to timely pay wages; (8) violation of Labor Code section 2802; (9) violation of Labor Code section 227.3; and (10) unfair competition. Dkt. 1-1 (Compl.). Sotero seeks to represent a class of current and former non-exempt employees of CTDI in California. Id.

## II. LEGAL STANDARD

"[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985); see also Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (If a valid arbitration agreement exists, "the court must order the parties to proceed to arbitration . . . in accordance with the terms of their agreement."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Ferguson v. Corinthian Colls., Inc., 733 F.3d 928, 938 (9th Cir. 2013) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

Generally, a court must determine two "gateway" issues when deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). If the party seeking arbitration meets these two requirements, the court must compel arbitration. 9 U.S.C. § 4; Chiron

4

Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

## III. DISCUSSION

CTDI moves to compel arbitration under the FAA on the grounds that Sotero executed an enforceable arbitration agreement that covers her individual claims. Mot. at 13. CTDI also moves to dismiss Sotero's class claims based on the agreement's class action waiver. Id.

### A. Existence of Arbitration Agreement

Sotero argues that the agreement does not include an agreement by the parties to arbitrate and there is therefore no valid and enforceable arbitration agreement.[3] Opp'n at 7-8, 17.

The Court finds that Sotero entered into a valid agreement to arbitrate disputes with CTDI by signing the document entitled "CTDI Arbitration Agreement." Agreement at 2. The agreement states that it "**REQUIRES ALL SUCH DISPUTES TO BE RESOLVED ONLY BY AN ARBITRATOR THORUGH FINAL AND BINDING ARBITRATION AND NOT BY WAY OF COURT OR JURY TRIAL**." Id. The document explains how the agreement and arbitration process work in ten enumerated sections with bolded headings. Id. at 2-7. Sotero typed her name and affirmed that she was "***accepting and agreeing to the terms of this Arbitration Agreement.***" Id. at 7. The agreement clearly indicates that it is an agreement to arbitrate disputes between the employee and CTDI.

Further, because the arbitration agreement applies to claims arising out of the employee's employment with CTDI, including those for "compensation, classification, minimum wage, seating, expense reimbursement, overtime, [and] breaks and rest periods," it covers all of Sotero's claims in this action. Id. at 2. CTDI has therefore established

---

[3] Sotero does not appear to dispute the applicability of the FAA to the arbitration agreement or the validity of her electronic signature. See generally Opp'n; see also Dkt. 13 at 7 n.2.

that the parties entered into an agreement to arbitrate, and that the agreement covers this dispute.

B.  **Unconscionability**

Sotero also argues that the arbitration agreement is both procedurally and substantively unconscionable. Opp'n at 8.

The FAA permits courts to invalidate an arbitration agreement because it is unconscionable. See AT&T Mobility LLC, 563 U.S. at 339 (citation omitted). To invalidate an arbitration provision as unconscionable under California law, Sotero must show both procedural and substantive unconscionability. See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000). A contract is procedurally unconscionable if it involved either "oppression" or "surprise." Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853 (2001). Substantive unconscionability focuses on whether the terms of the arbitration agreement are overly harsh or one-sided. Armendariz, 24 Cal. 4th at 114 (citation omitted); see also Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003).

Courts apply a sliding scale to determine if an agreement is unenforceable on the basis of unconscionability. Armendariz, 24 Cal. 4th at 114. As the party opposing arbitration, Sotero has the burden of demonstrating that the arbitration provisions are invalid. Moses H. Cone Mem. Hosp., 460 U.S. at 24-25; see also Higgins v. Superior Ct., 140 Cal. App. 4th 1238, 1249 (2006).

1.  **Procedural Unconscionability**

Sotero argues that the arbitration agreement is procedurally unconscionable because it constitutes a contract of adhesion and subjected Sotero to inexcusable surprise. Opp'n at 10-11.

Procedural unconscionability "focuses on 'oppression or surprise due to unequal bargaining power.'" See Lim v. TForce Logistics, LLC, 8 F.4th 992, 1000 (9th Cir. 2021) (citation omitted). "The oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of

6

meaningful choice." Id. (citation omitted). "It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." Serpa v. California Sur. Investigations, Inc., 215 Cal. App. 4th 695, 704 (2013). However, "where an opt out provision is offered, courts have held that an [a]rbitration [a]greement is not a contract of adhesion." Eastburn v. CVS Pharmacy Inc., No. SA CV 20-01961-DOC-(JDEx), 2021 WL 4712713, at *4 (C.D. Cal. Mar. 15, 2021).

Here, CTDI presented Sotero with the opportunity to opt out of arbitration. The arbitration agreement contains a section entitled "**Your Right To Opt Out Of Arbitration**" and explicitly states that "**[a]rbitration is not a mandatory condition of your employment at the Company, and therefore you may submit a statement notifying the Company that you wish to opt out and not be subject to this Agreement.**" Agreement at 6. Sotero had thirty days to mail a signed and dated written notice that she was opting out of the agreement and was informed that she would "not be subject to any adverse employment action as a consequence of that decision." Id. The opt-out section even advises that the employee has a right to consult with counsel regarding the arbitration agreement. See id. Because the arbitration agreement contains an opt-out provision, it is not a contract of adhesion. See Cir. City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (explaining that the arbitration agreement was not a contract of adhesion because the employee "was given the opportunity to opt-out of the . . . arbitration program by mailing in a simple one-page form" within thirty days).

The arbitration agreement also contains no element of surprise. "Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." Wayne v. Staples, Inc., 135 Cal. App. 4th 466, 480 (2006) (quoting Crippen v. Cent. Valley RV Outlet, 124 Cal. App. 4th 1159, 1165 (2004)). Here, the six-page document is entitled "CTDI Arbitration Agreement" and is organized into ten sections with bolded headings. The Court agrees with CTDI that the agreement "is clear,

unambiguous, and conspicuous." Dkt. 13 at 8. The arbitration agreement is not procedurally unconscionable.

### 2. Substantive Unconscionability

Sotero argues that the arbitration agreement is substantively unconscionable because it is not mutual, contains a PAGA waiver, and must be read with CTDI's confidentiality agreement, which Sotero contends violates Labor Code section 925. Opp'n at 12-17.

"Substantive unconscionability examines the fairness of a contract's terms." Lim, 8 F.4th at 1001 (citation omitted). "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided." Id. at 1002. Although the Court need not reach the question of substantive unconscionability, the Court considers each of Sotero's arguments in turn. See Ulbrich v. Overstock.Com, Inc., 887 F. Supp. 2d 924, 933 (N.D. Cal. 2012) ("In the absence of even a minimal showing on the procedural unconscionability prong, the Court need not reach the substantive unconscionability question.").

#### a. Mutuality

Arbitration agreements require a "modicum of bilaterality." Armendariz, 24 Cal. 4th at 117. "[I]t is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'" Id. Sotero argues the agreement is one-sided because "the employee is required to arbitrate against a host of third parties, without any similar benefit in return." Opp'n at 12-13; see also Cook v. Univ. of S. Cal., 102 Cal. App. 5th 312, 326-27 (2024) (explaining that "[t]he concern is that the agreement provides benefits to broad swaths of third-party beneficiaries only in favor of [the employer] without any showing of justification for this one-sided treatment").

The arbitration agreement provides:

> [T]his Agreement applies to any legal dispute, past, present or future, arising out of or related to Employee's (sometimes "you" or "your") application for employment, employment with [CTDI] ("Company") or relationship with any of its agents, employees, affiliates, successors, assigns, subsidiaries or parent companies or termination of employment regardless of its date of accrual and survives after the employment relationship terminates.[4]

Agreement at 2. Unlike the agreement in Cook, which "d[id] not require [the employer's] 'related entities' to arbitrate their claims against [the employee]," the arbitration agreement here requires both the employee and CTDI's related entities to arbitrate their claims against each other. Cook, 102 Cal. App. 5th at 326; see also Dkt. 13 at 9 ("[P]ursuant to the plain language of the Agreement, Plaintiff, Defendant, *and* Defendant's Related Entities are required to arbitrate any disputes relating to Plaintiff's employment."). The agreement therefore does not provide a benefit to CTDI's related entities because "any legal dispute" regarding Sotero's employment or relationship with the entities must be arbitrated, regardless of which party brings claims against the other. See Dkt. 13 at 9.

Sotero also argues that the burdensome opt-out process for employees renders the arbitration agreement not mutual.[5] Opp'n at 16-17. However, mutuality does not concern the mechanism for opting out of an arbitration agreement. Instead, "the doctrine of unconscionability limits the extent to which a stronger party may,

---

[4] Sotero asserts that the arbitration agreement is unconscionable because it survives in perpetuity. Opp'n at 13. However, Sotero cites no case law to support this contention. See id. Further, the Court is persuaded by CTDI's argument that "[b]ecause the claims subject to arbitration must arise from [Sotero's] application for employment, employment, and termination . . ., the Agreement does not realistically survive in perpetuity[.]" Dkt. 13 at 10 n.4.

[5] The process for opting out of the arbitration agreement does not seem burdensome. In fact, the existence of the opt-out provision benefits employees because it provides them with the opportunity to avoid arbitration.

9

through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." Armendariz, 24 Cal. 4th at 118. Here, the arbitration agreement imposes the same requirements on CTDI and Sotero. The Court therefore finds that the arbitration agreement is mutual and has more than a "modicum of bilaterality." Id. at 117.

### b. PAGA Waiver

Sotero additionally argues that the arbitration agreement is substantively unconscionable because it contains a waiver of the employee's right to bring PAGA claims in any forum. Opp'n at 14.

The Court agrees that the waiver of the employee's right to bring representative PAGA claims is unenforceable. See Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 427 (9th Cir. 2015) (holding the FAA does not preempt the rule barring the waiver of the right to bring representative PAGA claims); see also Viking River Cruises, Inc. v. Moriana, 596 U.S. 639, 662 (2022) (holding that the agreement waiving representative PAGA claims was invalid). However, the agreement does not prevent employees from bringing their representative PAGA claims in court in the event a court determines that the PAGA waiver is unenforceable.

The agreement provides:

> The Private Attorney General Waiver shall be severable from this Agreement in any case in which there is a final judicial determination that the Private Attorney General Waiver is invalid, unenforceable, unconscionable, revocable, void or voidable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

Agreement at 5. The agreement reiterates that "[t]he Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an

individual action and severance is necessary to ensure that the individual action proceeds in arbitration." Id. Pursuant to these severability clauses, the Court severs the PAGA waiver from the arbitration agreement. See Viking River Cruises, Inc., 596 U.S. at 662 ("[T]he severability clause in the agreement provides that if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.'").

###     c.     CTDI's Confidentiality Agreement

Sotero contends that CTDI's arbitration agreement must be read with its confidentiality agreement because they were both presented to Sotero as part of the onboarding process. Opp'n at 15. Sotero argues that because the confidentiality agreement violates Labor Code section 925, the confidentiality agreement renders the arbitration agreement unconscionable. Id.

> Labor Code section 925 provides:
>
> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
> (1) Require the employee to adjudicate outside of California a claim arising in California.
>
> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
>
> (b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

Cal. Lab. Code § 925(a)-(b). Sotero argues that the confidentiality agreement violates Labor Code section 925 because it states that it

11

"shall be governed by the laws of the Commonwealth of Pennsylvania" and therefore "clearly deprives [Sotero] of the substantive protection of California law."[6]  Opp'n at 15; see also Dkt. 11-1, Ex. 1 at 6.

Even if applying Pennsylvania law would "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California," the Court agrees with CTDI that "the remedy would be to void *only* the choice of law provision and apply California law, not to invalidate every agreement [Sotero] signed at the time of hire."  Dkt. 13 at 12; see also Cal. Lab. Code § 925(a)(2), (b).  Therefore, the choice of law provision in the confidentiality agreement does not impact the Court's unconscionability analysis.  See Tanious v. Wells Frago Advisors Fin. Network, LLC, et al., No. 2:24-cv-03903-ODW-E, 2024 WL 4729745, at *7 (C.D. Cal. Nov. 8, 2024) ("A contract '*provision*' that violates section 925 'is voidable by the employee,' meaning that even if . . . the choice of law clause is unenforceable, the Arbitration Clause stands as an entirely separate provision[]" and "is not substantively unconscionable.").  Because Sotero identifies no other potentially unlawful provision in CTDI's confidentiality agreement, the Court finds that the confidentiality agreement does not render the arbitration agreement unconscionable.

### 3.    Severability

Sotero argues that "the purported arbitration agreement is too permeated with unconscionability to be cured by severance of any one provision."  Opp'n at 17.

As explained above, the Court severs the representative PAGA waiver from the arbitration agreement.  Because the PAGA waiver is

---

[6] CTDI objects to the purported confidentiality agreement, dkt. 13-2, arguing that Sotero fails to lay a proper foundation and Sotero's counsel lacks personal knowledge that the document is a true copy of the confidentiality agreement presented to Sotero during onboarding. Id.  Assuming the document reflects the confidentiality agreement signed by Sotero during onboarding, the Court declines to find that the confidentiality agreement renders the arbitration agreement unconscionable.

the only unlawful provision in the agreement, the Court enforces the remainder of the arbitration agreement.  See Agreement at 7 ("[I]n the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable."); see also Armendariz, 24 Cal. 4th at 124 ("If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate."); Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1264 (9th Cir. 2006) ("California law . . . provides for striking unconscionable provisions, while leaving the remainder of the agreement intact, valid, and enforceable.").

Absent the PAGA waiver, the arbitration agreement is not unconscionable.

## IV. CONCLUSION

CTDI's motion to compel arbitration of Sotero's individual claims and to dismiss Sotero's class claims is granted.  See AT&T Mobility LLC, 563 U.S. at 340, 352 (holding that the FAA preempts California's rule classifying class action waivers in arbitration agreements as unconscionable); see also Epic Sys. Corp. v. Lewis, 584 U.S. 497, 502 (2018) ("In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings.").

The Court stays the case pending completion of the arbitration and orders the Clerk to administratively close the case.  The parties are to file a joint status report every 120 days, with the first report due March 18, 2025.  Each report shall state on the cover page the date the next report is due.  If the arbitration is not completed by March 18, 2025, the parties must file a joint status report beginning on that date and continuing every four months until the arbitration is completed.  Failure to file a required joint status report may result in dismissal of this action without prejudice.  The parties must advise the Court within 30 days of issuance of the final award.

IT IS SO ORDERED.

Date: November 18, 2024

_____

Dale S. Fischer
United States District Judge